Good morning, your honors. May it please the court. Elizabeth Richardson-Royer, on behalf of the appellant, Ronnie Johnson. I intend to reserve two minutes for rebuttal, but I will watch the clock. And this morning I plan to focus on two issues. The first is why the La Palma robbery evidence should have been excluded, where the commonalities between that robbery and the charge defense were not sufficiently unique, peculiar, or bizarre enough to support an inference of identity under this circuit's authority. And the second issue that I hope to address is why the evidence of the Placencia and Northridge robberies should not have been admitted merely to show the criminal relationship between Mr. Johnson and Daryl Wisner, as the government contends that it should. So turning first to the La Palma robbery, this trial within a trial that happened in district court, this court has repeatedly held that admitting another crime to prove identity is only permissible where that other crime was substantially similar to the charged crime in unique or distinctive ways. And the La Palma robbery, the July robbery in this case, was not. Most of the similarities between the La Palma robbery and the charged Citibank robbery were entirely generic. Casing a bank before robbing it, robbing it in the morning before it's going to be busy, choosing a bank near a getaway route, a freeway, wearing all black, doing the robbery in a takeover style, splitting up proceeds afterwards. Wasn't it not simply wearing all black, but the kind of hat that was worn? And I think the hat is really the key issue and the key fact that the government points to in the government's argument for this being sufficiently unique. Under this circuit's authority, I think it's not. I don't think it rises to the level of this peculiar, unique, or bizarre that this court has suggested would be sufficient, especially standing alone. It's not Mickey Mouse ears, as the court suggested in Luna, might be enough. It's not in Johnson the court suggested that the combination of a Cossack style hat and orange jacket, knitted brown gloves, asking a teller for change in coins, that might be enough. And this is just a hat. And there's no authority from this circuit suggesting that wearing a particular kind of hat, particularly a hat that's not, you know, it's readily available, it's a common style, would be enough to allow this trial within a trial, this incredibly prejudicial evidence to come in. And even if it was enough, even if under Rule 404B, this robbery could have come in to prove identity, even if it were sufficiently similar, it should have been excluded under Rule 403. And that's an abuse of discretion standard. Yes, Your Honor. And I contend that... Which is a bit of a higher hurdle for you. It is. It is a higher hurdle. But I think when you're looking at the enormously prejudicial impact of this evidence, in a trial where there was, you know, most of the evidence otherwise came from a co-defendant whose testimony should be viewed with suspicion, and would have been, this is enormously prejudicial. And the probativity of that robbery is really based only on this inference of identity, and that's based on this hat. So the probativity is very low, and the prejudice is very high. So to the extent that the court doesn't agree that it wasn't sufficiently similar to come in under 404B, it was an abuse of discretion. Didn't the judge issue a limiting instruction? Yes, Your Honor. And why was that not sufficient to protect the defendant? That goes, I think, to the issue of harmlessness, and the government does argue that any error is harmless. And when we look at harmlessness, the limiting instruction does go a long way. But given the evidence against Mr. Johnson, and it being so limited, and it being, you know, based so... Was there any other identity evidence offered at trial? At trial, at the trial in the Citibank charge? At Citibank, yeah. There was the co-defendant's testimony. There was a very sketchy eyewitness identification, an in-court identification, eight years after the crime, where the eyewitness identified the only black man in the courtroom. After he had told multiple investigators he would not have been able to do so. And then there was some circumstantial evidence that supported the co-defendant's theory. But there was no other, there were no, you know, fingerprints. There was, for the prior evidence, and this is why it was so harmful, there was DNA evidence connecting Mr. Johnson to the switch car, the car that was abandoned. And so for the prior robbery, there was some identity evidence that showed that he might have been involved. But for this one, there really was only the co-defendant's testimony, which is what made it so harmful. There were no, you know, fingerprints, no DNA, nothing like that, tying him to it. It was just... Co-defendant, or cooperator, whoever he was. And a bank employee who, eight years later, was identifying him in court. Right. And circumstantial evidence that supported... Were there any photographs at the Citibank? There were. At the Citibank robbery? There were videos and there were photographs. They were not, unlike the prior crime where you could see, you know, a face that resembled Mr. Johnson, you couldn't tell who this was in the video or the stills from the Citibank robbery. So that is, you know, why the harmfulness was so significant and why the limiting instruction really wasn't enough when you're talking... Could you tell anything about the hat that the person was wearing in the Citibank photos? You could tell that it was a similar style hat, similar in style and color, to the hat worn in the prior crime. So that is the one, really, you know, the one fact that shows any similarity at all. But under the circuit's authority, it doesn't... It's not a peculiar, bizarre hat. It's not something that really says, this is the only person who could have done this robbery. And when you're talking about the weighing of the prejudice and the probativity, this evidence should not have come in. Unless your honors have additional questions about that robbery, I wanted to turn to the jail calls and the evidence of the other robberies that came in because I think there's really a problem with the government's argument here about this criminal relationship being a potential exception to the requirement of similarity for identity evidence. And the government's position is essentially that if you can show criminal relationship, then you don't have to show a similarity. And if that were true, then it would eviscerate that requirement of a similarity at all because most times that you have evidence of prior crimes, it's going to come in through a co-defendant or somebody who has a criminal relationship with the defendant. Beyond that, there's... None of the government's cases from this circuit or any other circuit have a court allowing evidence of a prior crime to come in for purposes of establishing a criminal relationship to show identity. So courts have allowed it to show other things, like the case that the government cited in its 28-J letter, Beckman. The evidence was allowed to come in to show knowledge because in that case, the defendant disputed that he knew there was marijuana in the trailer that he was hauling across the border. There's no relevance like that in this case. The only relevance was to support Darrell Wisner's testimony and really his testimony was to show that Ronny Johnson had a propensity to commit bank robberies. And I think I'll reserve the remainder of my time. Sure. Thank you. May it please the Court, Greg Scali for the United States. Good morning, Your Honors. I intend to cover sort of the same ground that defense counsel did and start with the La Palma robbery. The standard that's laid out by this court in the Luna case, which is the case that defense primarily relies on, is that the other crimes evidence need only, and these next three words are emphasized, support and inference of identity. Whether or not it, referring to the other crimes evidence, whether or not it proves, and that is italicized identity, is a question for the jury. And so the question before this court is, are the similarities that the government lays out on pages 36 and 37 of its brief in this case, and I won't belabor reading the similarities to you, but the question is, do those similarities together, in combination, support an inference of identity between the perpetrator of the La Palma robbery and the perpetrator of the Citibank robbery, the charged robbery? And I would submit absolutely it does. They do. I would actually urge the court, the court asks defense counsel, were there photos and videos from the Citibank robbery and the La Palma robbery? There were, and the government's moved to transmit them, and I believe that motion has been granted electronically. I urge the court to look at those photographs and look in particular at their exhibits from the surveillance video showing a photograph of the defendant robbing the La Palma, and he's wearing all black and a black fisherman's hat, and he's pointing a gun. Why do we call it a fisherman's hat? That I couldn't tell you, Your Honor. Where does it come from? That was the question. I would have said maybe it's a golf hat. That was certainly a question I was not prepared for this morning. Was there any evidence that it's a fisherman's hat? Only that multiple witnesses refer to it that way. It's called either a bucket hat or a fisherman's hat. Ah, bucket hat. I think one of the other important points, Your Honor, I think in analyzing how to think about the uniqueness of the bucket hat or the fisherman's hat is the defense sort of suggests, well, you know, this is a common hat. I would submit that it's not. But more importantly, the question, and this language comes from Perkins, about the points of similarity is the question is, are the points of similarity between the two acts so common to most bank robberies as to be entirely unhelpful in supporting an inference of identity? It's not is this a hat that anyone has ever worn ever on the face of the earth in public. It's is this a generic feature of a bank robbery, that your bank robber always comes in and he's wearing a fisherman's hat? Well, some of the elements you identify in your brief are more generic. I mean, before 10 a.m. near a freeway, it sounds to me like you're really focusing on the hat. Is there anything beyond the hat? There is, Your Honor. And I guess I would say before going into that, the courts are also clear that a combination of less distinctive similarities can also in combination give rise to an inference of identity. And so those less common similarities are also pointed out because they do contribute to the inference of identity that can be made here. In addition to the fisherman's hat, the getaway car arrangement here was fairly unique, and something that's not present in any of the cases, this circuit or otherwise, where the court concludes that the similarities are insufficiently distinctive. So just quickly, the getaway arrangement was these individuals would go and steal an old model Toyota Camry, and they would caravan down from Los Angeles to Orange County in Weisner, the cooperating defendant, cooperating witness, Weisner's Chevy Tahoe, along with the stolen Camry. They would park the Chevy Tahoe at a secluded location near the bank. The robbers would proceed to the bank in the approach car, the stolen Camry, rob the bank, come back, abandon the stolen Camry, and leave in the Chevy Tahoe. That level of similarity is not present in any of the cases where the courts have said you don't have enough similarity. In addition, and this has sort of gotten a little lost in the briefing, is in both cases the defendant used a pillowcase. Now, you have to be careful because the level of generality with which you describe what's happening sort of affects whether you can make an inference of identity. The Luna case was troubled by the fact that in some of the charged cases and the uncharged robberies, there were pillowcases, there were canvas bags, there were different things. In the La Palma robbery and the Citibank robbery, the defendant used a pillowcase to carry the proceeds out. Now, the only evidence of that with respect to the La Palma robbery is the actual surveillance video itself because the victim wasn't able to testify to that, didn't remember that it was specifically a pillowcase. But again, I would urge the court to look at the surveillance video for both robberies and the photos that are taken from it. How much of the – do you see anything of the face in either of the surveillance videos? Yes, Your Honor. So Defense Counsel is right. The face in the charged robbery is fairly blurry. It's very difficult to see. You can certainly see that he's wearing the black fisherman's hat and the all-black clothing, but the face is fairly blurry. The face is a little bit clearer in the La Palma robbery. But I would take issue with the fact that that sort of hurts us when it comes to the 403 analysis because the Citibank robbery was actually stronger than the La Palma robbery. The evidence of the Citibank robbery was actually stronger than the La Palma. La Palma, we didn't have a witness who pointed out, identified the defendant as the perpetrator. Unless I was looking at the wrong photographs. The photographs of the La Palma robbery seem pretty clear. That's correct, Your Honor. The La Palma robbery photographs are clearer than the La Palma – than the photographs from the Citibank robbery. That's absolutely right. But we did not, with La Palma, have a witness, as we had in Scott Chapman with respect to the Citibank robbery, who actually pointed out the defendant as the perpetrator at trial. Unless the Court has further questions on that, I would like to move – Yes, Your Honor. I just want to make sure that you get to this point. Why was the information that Johnson had been arrested for a crime not involving Wiesner necessary for the government to contextualize other evidence? Yes, Your Honor. This is about the Costa Mesa robbery. I think if the Court looks at government excerpts of record 252 to 261, and that's the full transcript of the phone call, you'll see that this is a phone call of somebody who has just been arrested and is very clearly trying to deal with the fallout from being arrested and dealing with his criminal conduct. And the statement there in the transcript of that call, tell D he are right, in the context, it's practically a confession that he's been engaged in criminal conduct with Daryl Wiesner, the cooperating witness in this case. And that was the key issue in the case. Was, in fact, the defendant involved in criminal conduct with Daryl Wiesner? Couldn't you have had that statement without information that he had been arrested? Well, Your Honor, and if I'm misreading the defense position, I apologize, but my understanding is the defense position is not actually that they are not contesting the relevance of the fact of arrest. The only portion is that the fact that the arrest took place for something Wiesner wasn't involved in was inappropriate. And the position is that needed to be in there in order to give meaning to the fact that this was basically a confession that he had been engaged in criminal conduct with Daryl Wiesner. It was extremely probative of that. And even defense counsel's alternative explanation in the reply brief makes clear that this was probative, even if it was that the defendant was telling Wiesner or saying that he wasn't going to talk to police, that meant he had been engaged in criminal conduct with Wiesner. Why wasn't it an abuse of discretion to admit to jail calls discussing other robberies when Johnson acknowledged knowing Wiesner? Well, Your Honor, what I want to point to as the case to focus on, and I see I'm running out of time, is the Gettle case. So it's cited on page 57 of the government's brief. And it actually is a case in which the Eighth Circuit upheld in 2007 in basically identical circumstances to this case. There was a significant portion of the defense in Gettle focused on the cooperator's alleged incentive to implicate the defendant. The defense theory in Gettle was as here that it was the cooperator himself who had actually committed the crime and was falsely implicating the defendant who was known to him. And the Eighth Circuit said, look, that evidence was appropriately offered to show the connection between the defendant and the cooperator near the time of the charged crime. And because the focus of the defense there was that the cooperator was not credible, the relationship of Gettle and the cooperator was a material issue. And so this conduct was appropriately admitted. And I see I'm out of time. Thank you, Your Honor. Is there some rebuttal time? Okay. I want to focus on the two things that I didn't talk about in the opening part of the argument that Your Honors were asking the government about. The first is the Costa Mesa, the arrest for the January Costa Mesa robbery, which the government maintains was necessary in order to explain this comment, tell D he's okay. And that comment would have been inculpatory based on Mr. Johnson's arrest, regardless of what the arrest was for. He had been arrested, and we're not contending that that evidence shouldn't have been available to the jury. But what he was arrested for, the government did not need to bring in this other crime. They could have just said he's arrested, and he says, tell D he's okay, which, as the government hoped to show, really is inculpatory, and it could have still been inculpatory without this hugely prejudicial other crimes evidence. The one case that the government points to, this criminal relationship case, doesn't support the government's position, and it's an out-of-circuit case. This court has never approved criminal relationship in that way. But even Gettle, an issue in that case was the defendant had said, I didn't know the gun was stolen. This was a charge that he had sold a stolen firearm. He said, I didn't know the gun was stolen. And so the evidence of the prior bad act between the defendant and the witness was evidence to defeat his argument about knowledge. And several of the cases that the government cites have to do with knowledge. But what the government is saying in this case is that this criminal relationship, these other crimes having to do with the criminal relationship, should come in purely for identity. And I haven't seen a case, and the government hasn't cited one, where that is permissible under 404B. Anything else? No. Thank you. Thank you, counsel. Thank you, counsel, both of you. We appreciate your arguments this morning. Thank you.
judges: Paez, Clifton, Katzmann